NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ORTHOACCEL TECHNOLOGIES, INC.,**
*Plaintiff-Appellant*

**v.**

**PROPEL ORTHODONTICS, LLC, PROPEL ORTHODONTICS USA, LLC,**
*Defendants-Appellees*

---

2018-1534

---

Appeal from the United States District Court for the Northern District of California in No. 3:17-cv-03801-RS, Judge Richard Seeborg.

---

Decided: September 23, 2019

---

PAUL V. STORM, Foley Gardere Foley & Lardner LLP, Dallas, TX, argued for plaintiff-appellant. Also represented by EILEEN R. RIDLEY, San Francisco, CA.

CHRISTOPHER S. SCHULTZ, Burns & Levinson LLP, Boston, MA, argued for defendants-appellees. Also represented by DAVID LEFEBVRE, ERIC PAUL RACITI, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, Boston, MA; J. MICHAEL JAKES, Washington, DC.

———————————

Before PROST, *Chief Judge,* REYNA and WALLACH, *Circuit Judges.*

REYNA, *Circuit Judge.*

OrthoAccel Technologies, Inc. appeals from a decision of the U.S. District Court for the Northern District of California denying its motion for a preliminary injunction. The district court determined that the patent at issue could not claim priority to its parent application because the parent application lacked written description support for the claimed "1 to 20 minutes daily" limitation. On this basis, the district court determined that OrthoAccel Technologies, Inc. was unlikely to demonstrate at trial that the patent at issue was not anticipated by its parent application and denied the preliminary injunction. Because we conclude for the reasons below that the district court did not abuse its discretion, we *affirm*.

BACKGROUND

I. The '184 Patent

OrthoAccel Technologies, Inc. ("OrthoAccel") is the assignee of U.S. Patent No. 9,662,184 ("the '184 patent"), entitled "Vibrating Dental Devices." The '184 patent is directed to a method for providing accelerated tooth movement using a vibrating dental device for persons undergoing traditional orthodontic treatment. '184 patent, Abstract, col. 1 ll. 24–25. The '184 patent discloses that it was well known in the field of orthodontics that "a pulsating force" could be employed "to move teeth more rapidly and to ease the discomfort of traditional orthodontics." *Id.* col. 1 ll. 44–46. The '184 patent explains that prior art devices, however, were "bulky," "expensive," and "very difficult to use." *Id.* col. 1 l. 66–col. 2 l. 3. The '184 patent attempts to solve these problems by providing a method of using an improved vibrating device with an intraoral U-

shaped plate and an extraoral vibrating actuator. *Id.* col. 2 ll. 63–64, col. 14 ll. 1–20. The '184 patent discloses "applying differential vibration to selected areas of a bite plate . . . for a period of 1–60 minutes, preferably about 1–30 or 1–10 minutes or 20 minutes." *Id.* col. 7 ll. 33–38.

Independent claim 10 of the '184 patent is at issue in this appeal and recites:

> A faster method of orthodontic remodeling, comprising:
>
> > a) a patient wearing an orthodontic appliance biting an orthodontic remodeling device, said orthodontic device comprising:
> >
> > > i. an extraoral housing containing a power source operably coupled to an actuator operably coupled to a processor that controls said actuator; and
> > >
> > > ii. said extraoral housing operably connected to an intraoral U-shaped bite plate;
> > >
> > > iii. wherein during use said orthodontic remodeling device is held in place only by teeth clamping on the bite plate and said orthodontic remodeling device vibrates at a frequency from 0.1 to 400 Hz; and
> >
> > b) activating said orthodontic remodeling device *for 1 to 20 minutes daily*;
> >
> > wherein said method provides accelerated tooth movement as compared to without using said orthodontic remodeling device.

*Id.* col. 14 ll. 1–20 (emphasis added).

The application that led to the '184 patent claims priority to a series of applications starting with U.S. Provisional Application No. 60/906,807, filed on March 14, 2007 ("the provisional application"). The provisional application led to non-provisional U.S. Application No. 11/773,849, filed on July 5, 2007, and published on September 14, 2008 ("the parent application"). U.S. Application No. 12/615,049 is a continuation-in-part of the parent application and was filed on November 9, 2009, more than one year after publication of the parent application ("the CIP application"). The CIP application was followed by two parallel continuation applications, and then the continuation application from which the '184 patent issued.

Both the provisional application and the parent application disclose only that OrthoAccel's vibrating device should be worn for "approximately" or "about" twenty minutes per day. J.A. 578, 609, 614. Both of these applications also disclose that "longer or shorter" time periods or "any other suitable duration of time" may be used, but do not expressly disclose any other specific period of time. J.A. 578–79, 609. The CIP application first introduced time periods other than "about" 20 minutes, disclosing the same durations of "1–60 minutes, preferably about 1–30 or 1–10 minutes or 20 minutes" as the '184 patent. J.A. 661–62.

## II. District Court Proceedings

On July 4, 2017, OrthoAccel brought suit against Propel Orthodontics, LLC and Propel Orthodontics USA, LLC (collectively, "Propel") for infringement of claim 10 of the '184 patent. On August 18, 2017, OrthoAccel filed a motion for a preliminary injunction. Propel opposed the motion, arguing that a preliminary injunction was not warranted because claim 10 of the '184 patent was invalid under 35

U.S.C. § 102(b)[1] as anticipated by the parent application. Propel further argued that claim 10 was not entitled to claim priority to the parent application because the "1–20 minutes daily" limitation was new matter introduced in the CIP application and not supported by the parent application.[2] In reply, OrthoAccel conceded that the parent application discloses every limitation of claim 10 and was published more than one year prior to the filing date of the application that led to the '184 patent, thus making it anticipatory prior art under § 102(b). J.A. 1213 n.1. The invalidity issue thus turned on the question of priority. J.A. 24.

Finding that Propel raised a substantial question of validity with respect to the '184 patent, the district court determined that the burden at the preliminary injunction stage was on OrthoAccel to demonstrate a likelihood of succeeding at trial on the validity issue. J.A. 21, 25. The district court found that OrthoAccel did not meet this burden, explaining that the disclosures in the provisional and

---

[1] Section 102(b) was amended by the Leahy–Smith America Invents Act ("AIA"). *See* Pub. L. No. 112–29, § 3(c), 125 Stat. 284, 287 (2011). Because the '184 patent has an effective filing date prior to March 16, 2013, the effective date of the AIA, the pre-AIA version of § 102(b) applies. Pre-AIA § 102(b) provided that "[a] person shall be entitled to a patent unless . . . the invention was patented or described in a printed publication in this or a foreign country . . . more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b) (2006).

[2] Propel also argued that a preliminary injunction should not be granted because OrthoAccel was unlikely to succeed in proving infringement. J.A. 22–23, 418–19. The district court's rulings on the subject of infringement, however, are not at issue on appeal.

parent applications of "using time periods somewhat longer or shorter than 20 minutes carry no hint that time periods as short as a minute or two might suffice." *Id.*

The district court rejected OrthoAccel's argument that a person of ordinary skill in the relevant art would have immediately discerned the "1–20 minutes daily" limitation from the parent application based on that application's disclosure of an inverse relationship between the vibration frequency and the treatment time. J.A. 26. The district court explained that any such inverse relationship nonetheless did not teach "treatment periods other than those relatively close to 20 minutes." *Id.* The district court also rejected OrthoAccel's argument that the "1–20 minutes daily" language must be supported by the parent application because it was proposed by the examiner during prosecution of the '184 patent, finding that the examiner likely suggested the language to conform to the disclosure in the CIP application instead of the parent application. *Id.* Accordingly, the district court denied OrthoAccel's motion for a preliminary injunction.

OrthoAccel appeals. We have jurisdiction under 28 U.S.C. § 1292(c)(1).

DISCUSSION

We review a denial of a preliminary injunction for abuse of discretion. *Takeda Pharm. U.S.A., Inc. v. W.-Ward Pharm. Corp.*, 785 F.3d 625, 629 (Fed. Cir. 2015) (citing *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1345 (Fed. Cir. 2008)); *see also eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006) ("[T]he decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and . . . such discretion must be exercised consistent with traditional principles of equity."). A district court abuses its discretion when it commits a "clear error of judgment in weighing relevant factors or exercise[s] its discretion based upon an error of law or clearly erroneous factual findings." *Titan Tire Corp. v. Case New*

*Holland, Inc.*, 566 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1364 (Fed. Cir. 1997)).

A patent owner moving for a preliminary injunction must establish that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities is in its favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Takeda*, 785 F.3d at 629. With respect to the first factor, a patent owner must demonstrate that it will likely succeed in proving infringement, and that it will likely prevail on the issue of invalidity, if raised. *Titan Tire*, 566 F.3d at 1376.

To challenge validity at the preliminary injunction stage, the challenger must come forward with evidence of invalidity, just as it would be required to at trial, because an issued patent always enjoys a presumption of validity. *Id.* at 1377. The challenger may rely solely on the language of the claims and the written description to demonstrate that a patent is invalid on its face for failure to meet the written description requirement. *Univ. Of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 927 (Fed. Cir. 2004) (citing *PIN/NIP, Inc. v. Platte Chem. Co.*, 304 F.3d 1235, 1247–48 (Fed. Cir. 2002)). Once the challenger presents evidence of invalidity, the burden is on the patent owner to present contrary evidence to "persuade the court that, despite the challenge presented to validity, the patentee nevertheless is likely to succeed at trial on the validity issue." *Titan Tire*, 566 F.3d at 1377, 1380. The district court must then weigh the entirety of the evidence and determine whether the patent owner has met its burden of persuasion. *Id.* at 1378–79.

The parties here agree that claim 10 is anticipated by the parent application if the priority issue is resolved against OrthoAccel. J.A. 1213 n.1. The issue on appeal is

thus whether Propel presented sufficient evidence that claim 10 was not entitled to claim priority to the parent application for the district court to place the burden on OrthoAccel to demonstrate a likelihood of success on the invalidity issue at trial. We conclude that it did.

OrthoAccel argues that the district court abused its discretion by "disregarding" the presumption of validity and shifting the burden to OrthoAccel to demonstrate validity when, according to OrthoAccel, Propel "produced no evidence of invalidity whatsoever." Appellant's Br. 26. We disagree. In opposing OrthoAccel's motion for a preliminary injunction, Propel pointed to the provisional and parent applications, which only disclosed time periods of "approximately" and "about" twenty minutes, and contended that these disclosures provided insufficient written description support for durations of "1–20 minutes daily." J.A. 416. Despite OrthoAccel's arguments to the contrary, *see* Appellant's Br. 28; Reply Br. 10–14, this intrinsic evidence is a sufficient basis for the district court's finding that Propel adequately challenged the validity of the '184 patent at the preliminary injunction stage. Although factual disputes about the disclosures of the provisional and parent applications may have existed, that alone did not require the district court to go beyond the intrinsic record and rely on expert testimony to resolve these disputes. *See Titan Tire*, 566 F.3d at 1379 (explaining that at the preliminary injunction stage, a district court may be required "to make its decision based on less than a complete record or on disputed facts whose eventual determination will require trial" (citing *Univ. of Tex., v. Camenisch*, 451 U.S. 390, 395 (1981) and *New England Braiding Co. v. A.W. Chesterton Co.*, 970 F.2d 878, 883 (Fed. Cir. 1992))). The district court here correctly relied on evidence from the prosecution history of the '184 patent to require OrthoAccel to rebut the challenge to the validity of claim 10.

Propel also relied on the testimony of its expert, Dr. Yadav, who opined that a person of ordinary skill in the art

"would not interpret 'about 20 minutes' to include anything but slight variations from 20 minutes." J.A. 416–17. OrthoAccel concedes that Propel submitted two expert declarations. Appellant's Br. 30. OrthoAccel nonetheless contends that this testimony is "legally meaningless" because the district court did not cite to it in its decision, and because the expert did not consider the entirety of the provisional and parent applications. *Id.* at 30–32. These arguments are without merit. First, there is no requirement that the district court expressly cite to every piece of evidence. *Plant Genetic Sys., N.V. v. DeKalb Genetics Corp.*, 315 F.3d 1335, 1343 (Fed. Cir. 2003); *see also Medtronic, Inc. v. Daig Corp.*, 789 F.2d 903, 906 (Fed. Cir. 1986) ("We presume that a fact finder reviews all the evidence presented unless he explicitly expresses otherwise."). Rather, the district court need only provide sufficient support for its factual findings to demonstrate that those findings were not "clearly erroneous." *Titan Tire*, 566 F.3d at 1375. The district court did so here.

Second, OrthoAccel's challenge to Propel's expert testimony fails because Dr. Yadav considered both the provisional and parent applications in his analysis. *See* J.A. 514–15. The remainder of OrthoAccel's arguments attack the weight and credibility of Dr. Yadav's testimony, which we do not reweigh on appeal. *Nutrinova Nutrition Specialties & Food Ingredients GmbH v. Int'l Trade Comm'n*, 224 F.3d 1356, 1359 (Fed. Cir. 2000) (explaining that an appellate court does not reweigh the evidence or reconsider the credibility of the witnesses).

## Conclusion

We have considered OrthoAccel's remaining arguments and find them unpersuasive. We conclude that in light of Propel's challenge to the validity of the '184 patent, the district court did not abuse its discretion by requiring OrthoAccel to prove at the preliminary injunction stage that it was more likely than not to prevail on the invalidity

issue at trial. We also conclude on the record before us that the district court correctly found that OrthoAccel did not meet that burden.[3] We therefore *affirm* the district court's denial of OrthoAccel's motion for a preliminary injunction.

## AFFIRMED

COSTS

Each party shall bear its own costs.

---

[3] Propel asks us to go a step further and hold that claim 10 is anticipated by the parent application. Appellee's Br. 25. Given that this case is at the preliminary injunction stage, the district court correctly did not resolve the question of validity, *see Titan Tire*, 566 F.3d at 1377, and we decline to do so in the first instance.